Division 85, Amalgamated Transit Union; James F. McCarthy, Business Agent; Warren S. George, President, and George S. Porter, Financial Secretary-Treasurer, Individually and as representatives of the class of striking employees of the Port Authority of Allegheny County, Appellants, *v.* Port Authority of Allegheny County, Appellee. (Two Cases)

Argued November 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph J. Pass, Jr.,* with him *Jubelirer, McKay, Pass & Intrieri,* for appellants.

*James Q. Harty,* with him *Arthur J. Schwab* and *Reed, Smith, Shaw & McClay, for* appellee.

OPINION BY JUDGE KRAMER, December 13, 1974:

This opinion will deal with two appeals filed by Division 85, Amalgamated Transit Union, et al. (Union) from orders of the Court of Common Pleas of Allegheny County, issued in an equity action involving a labor dispute between the Union and the Port Authority of Allegheny County (PAT). The three orders involved will be described in the statement of facts set forth hereinafter.

The Union and PAT had a collective bargaining agreement, which by its terms expired November 30, 1973. Prior to its expiration the parties attempted to negotiate a new collective bargaining agreement, to become effective December 1, 1973. At the end of the term of the then existing agreement (November 30, 1973), PAT, by letter, offered to place the dispute into binding arbitration under the provisions of Section 13.2 of the Second Class County Port Authority Act, Act of April 6, 1956, P. L. (1955), 1414, *as amended,* 55 P.S. §563.2.

On Sunday, December 2, 1973, at or about 2:00 P.M., the membership of the Union met in a closed meeting. The record does not disclose what transpired at the meeting. The record does disclose, however, that after this meeting a man who identified himself as a union official advised representatives of the news media, gathered outside the meeting hall, that "[t]he outcome is that there will be a strike as of 12:01 tonight." This statement was taken on a tape recording by a representative of the news media, and the tape was introduced into evidence. Later that same day, Sunday, December 2, 1973, counsel for PAT contacted counsel for the Union to advise him that a complaint in equity seeking an injunction against the anticipated strike allegedly called for the following day would be presented to a judge of the Court of Common Pleas of Allegheny County.

Thereafter, the Honorable RICHARD T. WENTLEY called a hearing for 8:00 P.M. on that same Sunday, December 2, 1973, at which both parties were represented. The complaint was presented to Judge WENTLEY at this time, and, because of the seeming urgency of the matter, the court entered upon an immediate hearing. Although the complaint presented by PAT alleged that a work stoppage had already occurred, the record made that Sunday evening clearly shows, in unequivocal language, that neither prior to the hearing nor at the time of the hearing was there any work stoppage or strike in progress by the Union or any of its members. PAT rested its entire case upon the one statement of the one Union official made after the closed Union meeting, alluded to above. It also should be noted that (1) at the time of the hearing, although the Union's counsel appeared, no one representing the Union had been served with any process; and (2) within the three or four hour period given to counsel for the Union prior to the hearing, he had not been able to con-

tact any Union officials, and thus had no opportunity to present their testimony by way of defense to the rather short presentation made by PAT at the hearing.

On that same day, December 2, 1973, following the hearing, Judge WENTLEY signed an "Order of Court and Writ of Assistance" as follows:

"AND Now, to-wit, this 2nd day of December, 1973, the plaintiff having presented its Complaint seeking a Preliminary or Special Injunction against the defendants, and it appearing to the Court that immediate and irreparable loss and damage will result to the plaintiff and the public, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

"1. That defendants, their officers, representatives, members and plaintiff, are directed and required to utilize Section 563.2 of the Second Class County Port Authority Act for the settlement of any disputes with respect to the negotiation issues now in dispute, and the union be directed to appoint its respective arbitrator forthwith, and to comply with all other provisions of the aforesaid Section 563.2.

"2. That an injunction is issued, preliminary until hearing, and permanent thereafter, restraining and enjoining the defendants, and each of them, and the class they represent, and all persons in active concert or participation with them, from:

"(a) Engaging, or continuing to engage, in a strike or transit stoppage of plaintiff's operations in the City of Pittsburgh, Pennsylvania, or elsewhere in Allegheny County;

"(b) Picketing or in any other manner interfering with the orderly resumption of, or continuation of, operations at plaintiff's operations located in the City of Pittsburgh, Pennsylvania or elsewhere in Allegheny County;

"(c) Interfering with the operation of plaintiff's buses and street cars on the streets and highways of the

City of Pittsburgh, of Allegheny County and surrounding areas.

"3. During the pendency of this Order of Court the Port Authority of Allegheny County shall continue its operations in its normal and customary fashion without resort to lockout of Division 85 employees.

"4. Plaintiff is hereby directed to serve copies of this Order on the named defendants, and post a copy of this Order at each of the ten operating locations of plaintiff.

"5. This Order shall continue in full force and effect until further Order of Court.

"6. A hearing on a Preliminary Injunction in this matter is scheduled for Tuesday, December 4, 1973, at 10:00 a.m. E. S. T. at the same Court and location.

"7. The Port Authority is an agency of the Commonwealth of Pennsylvania and no injunction bond is required, as provided in Section 1531 of the Pennsylvania Rules of Civil Procedure."

We note from a reading of this order that the court used the future tense "will result" in its finding of immediate and irreparable loss and damage. This usage comports with our reading of the record, which indicates that a work stoppage or strike had not occurred at the time of the hearing or the time the order was issued.

On December 3, 1973 (at 10:15 A.M.), the complaint and the order were filed in the Prothonotary's Office. On this same date, PAT filed[1] a petition for a rule to show cause why the Union should not be adjudged in civil contempt, since at 12:01 A.M. on December 3, 1973, the Union and its members did in fact engage in a work stoppage. On Tuesday, December 4, 1973, a

---

[1] Although this petition is marked as having been received by the Judge at "3:10 P.M." on December 3, 1973, the document does not have affixed any marking as having been received or filed officially with the Prothonotary of Allegheny County.

hearing was held before the court below on whether the preliminary injunction of December 2, 1973 should be continued, at which hearing the court also heard arguments on the civil contempt rule. At the end of that argument, the court set a return date on the rule for 1:30 P.M., December 5, 1973. On December 5, 1973, the court held a hearing on the rule. As a result of these hearings, the court below on December 5, 1973, issued an order continuing in its entirety the injunction dated December 2, 1973 (set forth above), pending a hearing on a permanent injunction. Also on December 5, 1973, the court issued a civil contempt order in which it adjudged the Union (but not its members or officers) to be in civil contempt and fined the Union $7,500 for each day after December 6, 1973, during which the Union failed to comply with the court's orders of December 2 and December 4, 1973. It is from these three orders of court (dated December 2 and 5, 1973) that the Union appealed to this Court.

Although the Union presents several issues in its appeal, the first issue it raises is dispositive of the case, and there is no need to pass upon the remaining questions. The Union initially questions whether the court below had jurisdiction to entertain a complaint in equity requesting injunctive relief prior to the commencement of a work stoppage. This issue has recently been resolved by our Supreme Court in *Commonwealth of Pennsylvania v. John Ryan, et al.,*     Pa.     , 327 A. 2d 350 (1974) in an opinion written for the majority of the Court by Justice POMEROY. In that case, the Philadelphia School Board instituted a proceeding in equity on January 4, 1973 against the Philadelphia Federation of Teachers (Union). The hearing was held January 5, 1973, and the President Judge of that court ruled that no injunction could issue until a strike was actually in progress. The court then scheduled a hearing for January 8, which was the day that a strike was

scheduled to begin. An injunctive order was issued and, later, officials of the Union were adjudged to be in contempt. On appeal, our Supreme Court held that: "Having properly ruled that the School Board's application for injunctive relief was premature, the chancellor should have dismissed the complaint on January 5th. The defect of premature filing could not be cured by the subsequent occurrence of the threatened strike. As we said in Brenner v. Sukenik, 410 Pa. 324, 328, 189 A. 2d 246, 248 (1963) : '[t]he question of equity's jurisdiction must be determined on the facts and circumstances existing upon the date the action is instituted. [Citations omitted] When, instead of dismissing the complaint, the chancellor postponed hearing on its prayer for a preliminary injunction until the day the strike was scheduled to begin, he clearly believed that he was expediting the disposition of a matter of grave public importance without prejudicing the rights of either the Federation [Union] or the School Board; he assumed that the jurisdiction to enjoin found lacking on Friday the 5th would have ripened and become exercisable by Monday the 8th. But it was not merely the power to grant an injunction that was absent on the 5th; it was the right of the School Board to invoke jurisdiction at all. *No right of action existed until the strike was in being.* Where matters of jurisdiction are concerned, the courts must enforce the letter of the law. 'No emergency, real or feared, and no alleged hardship to a complaining party, however great, can justify a court's entertaining and passing upon a subject matter which is not within its jurisdictional competence.' " [Citations omitted.] (Emphasis added.)

While we recognize that the *Ryan* opinion was passing upon a controversy arising under the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.101 et seq. ("Act 195"), the principle of law pertaining to the jurisdiction of a court sitting in eq-

uity in labor dispute cases is controlling in the instant case.

On the question of the civil contempt order, the Court in *Ryan* stated: "[I]t is equally well settled that a party may not be held in contempt of court for ignoring an order or decree which is void for want of jurisdiction in the issuing court." [Citations omitted.] Although our Supreme Court noted an exception to this general rule with respect to temporary injunctions designed to maintain the status quo, that exception is only available "while the court resolves the question of its jurisdiction." In the instant case, counsel for the Union clearly raised the issue of the court's jurisdiction from the very beginning. Judge WENTLEY, at the end of the hearing held December 2, 1973, resolved that issue from the bench when he stated: "I feel this Court has jurisdiction."[2] Almost immediately thereafter, he stated: "I am troubled by the statement that no work stoppage as yet has transpired." Still later, he said: "I feel that compelling arbitration, which I intend to do at this time, I feel that I can at this same time prevent any work stoppage from occurring." There can be no question that the court resolved and ruled that it had jurisdiction and, therefore, the exception noted by the *Ryan* opinion is not applicable here.

In summary, we hold that the principles laid down in *Ryan, supra,* control the result of this case. We conclude that because no work stoppage or strike had occurred at the time the complaint in equity was presented (at the hearing held on December 2, 1973) the court below did not have jurisdiction to enter its order of December 2, 1973. Under the holding of *Ryan*, the lower court should have dismissed the complaint. For the

---

[2] In fairness to Judge WENTLEY we should highlight the fact that the *Ryan* decision was handed down subsequent to his order, and therefore he did not have the advantage of relying upon it as we do.

reasons stated above, the two additional orders, both dated December 5, 1973, cannot be upheld. We therefore

ORDER

AND NOW, this 13th day of December, 1974, based upon the record in the above-captioned matter and upon the above discussion, it is ordered that the Order of Court and Writ of Assistance dated December 2, 1973, the Order of Court Continuing Preliminary Injunction, dated December 5, 1973, and the Civil Contempt Order dated December 5, 1973, issued by the Court of Common Pleas of Allegheny County be and they hereby are vacated; and, it is further ordered that the complaint filed by the Port Authority of Allegheny County in this matter be and it hereby is dismissed, with each party to pay its own costs.